UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BYRON A. MUSTARD,

    Plaintiff,

    v.

JOSEPH LEHMAN, *et al.*,

    Defendants.

NO.  CV-05-103-RHW

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court are Defendants' Motion for Summary Judgment (Ct. Rec. 16) and Plaintiff's Motion for Summary Judgment (Ct. Rec. 50).  Plaintiff Mustard filed a 42 U.S.C. § 1983 complaint, *pro se*, alleging violations of his Fourteenth and Fifth Amendment rights, retaliation, and the tort of conversion.

## FACTS

The following facts are construed in the light most favorable to the Plaintiff.[1]

This case revolves around the Department of Corrections' (DOC) withdrawal of some of inmate Plaintiff Byron Mustard's money from his prison account in violation of his judgment and sentence (J&S). The DOC tracks and maintains an inmate's funds through a system called the Trust Account System (TAS).  TAS automatically makes deductions from funds deposited to an inmate's account for legal financial obligations (LFOs). Therefore, TAS automatically deducts money from the wages of an inmate working in Class I and Class II

---

[1]  The facts are almost entirely based on the government's statement of facts because Mr. Mustard did not file a statement of facts.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 1

industries.  To deduct for LFOs, TAS interfaces with a system called the Judicial Accounting Sub System (JASS).  JASS monitors the amount of LFOs an inmate owes to the State. The ability of TAS to deduct from an inmate's funds or wages is determined by the setting of an inmate's DT18 computer screen. (Ct. Rec. 18).

For male inmates, such as Mr. Mustard, the initial setting of the DT18 screen is done at the Washington Corrections Reception Center in Shelton, Washington. When a J&S allows the deduction of funds, an inmate's DT18 computer screen will be set to "Y" (yes). When an inmate's J&S prohibits the deduction of funds, the inmate's DT18 computer screen will be set to "N" (no).  Changes to an inmate's DT18 screen can be made if the J&S changes.  The institution's staff where the inmate is incarcerated has the authority to change an inmate's DT18 screen when the J&S changes.  (Ct. Rec. 18).

Activity in an inmate's account is recorded on a statement given to the inmate each month.  If the inmate promptly challenges improper LFO deductions by filing a complaint, the DOC institution can usually reverse and refund the deductions. (Ct. Rec. 18).

Plaintiff Mustard was placed into DOC custody on November 19, 1998, and sent to Airway Heights Corrections Center (AHCC).  Mustard was initially charged and convicted of Attempted Murder.  Mustard's LFO deductions were to commence one hundred and twenty days after sentencing. Thus, Mustard's DT18 screen was set to "Y". (Ct. Rec. 18).

In January 2001, Mustard's initial J&S was vacated and replaced by a conviction for First Degree Assault.  Moreover, the J&S was changed so that Mustard did not have to begin payment of LFOs until one hundred and twenty days *after release*.  At that time, Mustard's DT18 screen should have been set to "N" to prevent LFO deductions of his funds.  However, Mustard's DT18 screen remained set to "Y" until 2004. (Ct. Rec. 18).

In 2002, Mustard worked in a DOC correctional industries program.  As a

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 2

result of Mustard's DT18 screen being set to "Y", the TAS automatically made LFO deductions. The total amount deducted from Mustard's wages was $87.99. Mustard did not file a complaint. In September 2004, a $20.00 LFO deduction was made from funds Mustard received from outside of prison. The total amount of money deducted from Mustard's wages and accounts was therefore $107.99. (Ct. Rec. 18).

On October 6, 2004, after TAS deducted $20.00 from Mustard's outside prison fund, Mustard filed an internal complaint with the AHCC staff. The AHCC staff agreed with Mustard that his 2001 J&S prohibited LFO deductions while he was incarcerated and *may* have been refunded the $20.00.[2] Additionally, the AHCC staff changed Mustard's DT18 screen to "N" to reflect his January 2001 J&S. However, because the earlier-withdrawn funds had already been forwarded to Mustard's county of conviction (Chelan), the AHCC staff was unable to refund the $87.99 deductions taken from Mustard's wages. The AHCC staff wrote to Mustard that any further grievance must be filed with the county of Mustard's conviction. (Ct. Rec. 1, Exs. 4, 6, 7).

In December 2004, Mustard filed a tort claim with the Washington state

---

[2] There is some confusion regarding whether Mustard was refunded $20.00. Both Defendants Archer and Miller-Stout, in their letters to Mustard, claim that the $20.00 has been forwarded to the County of Chelan and they could not refund any of the money. However, Defendant LaFrance, in a letter written to Mustard, claims that Mustard was refunded the $20.00 on October 21, 2004. The La France letter was written after Archer's and Miller's letters. The Government appears to have taken the position that Mustard was refunded the $20.00 (Ct. Rec. 18). Mustard, in his complaint, makes no mention of being refunded $20.00. Further, Mustard's bank statement submitted with his Complaint does not cover the month of October 2004. (Ct. Rec. 1, Ex. 3).

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 3

office of Risk Management for damages resulting from the $87.99 deducted from his wages and the $20.00 deducted from his prison fund. In response, Defendant Barshaw informed Mustard that his J&S compelled the deduction of LFOs one hundred and twenty days after sentencing. Barshaw denied Mustard's tort claim and reset his DT 18 screen to "Y". At some point in time, however, someone apparently corrected Barshaw's actions and reset Mustard's DT18 screen to "N" in compliance with his 2001 J&S order. (Ct. Rec. 1, exhibit 8, 9, 10).

## STANDARD OF REVIEW

### A.    Pro Se Litigant

Because the Plaintiff is proceeding *pro se*, the Court will liberally construe all of his claims for relief. *Ortez v. Washington County,* 88 F.3d 804, 807 (9th Cir. 1996). As stated in *Jones v. Community Redevelopment Agency,* "the allegations of a pro se complaint, 'however inartfully pleaded,' should be held 'to less stringent standards than formal pleadings drafted by lawyers . . . .'" 733 F.2d 649, 646 (9th Cir. 1987) (citation omitted).

### B.    Law of Summary Judgment

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "reasonable minds could differ as to the import of [the] evidence." *Id.* at 250-51. If the evidence presented to the Court is not significantly probative or is merely colorable, then summary judgment is appropriate. *Id.* at 249-50. The nonmoving party must produce "more than the mere existence of a scintilla of evidence." *Miller v. Glenn Miller Productions, Inc.,* 454 F.3d 974, 988 (9th Cir. 2006). If the

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 4

nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," then the trial court should grant the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## DISCUSSION

**A.    Mustard's § 1983 Claim**

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. 1983.  For Mustard to establish liability under a § 1983 claim, Mustard bears the burden of proving that the government officials: (1) acted under color of state law; and (2) deprived Mustard of rights secured by the Constitution or federal statutes.  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). Further, "a claim brought pursuant to section 1983 may or may not require intent; the requirements for section 1983 claims are the same as those for establishing the underlying constitutional or statutory violations." *See Gutierrez v. Mun. Court of Se. Judicial Dist., Los Angeles County*, 838 F.2d 1031, 1046 (9th Cir. 1988) (vacated and held moot on other grounds 873 F.2d 1342, 1343 (9th Cir. 1989)).

Here, Mustard is bringing suit against multiple government officials.  All the government officials are being sued in their official and individual capacities. Mustard alleges that the government violated (1) his Fourteenth Amendment right to due process of the laws; (2) his Fifth Amendment right to just compensation; and (3) his First Amendment rights by retaliating against him when he filed his

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 5

grievance.

Because Mustard's LFOs were deducted pursuant to state action, Mustard has satisfied the first element of his section 1983 claim. Thus, the remaining question is whether the government deprived Mustard of a constitutional right, *i.e.*, due process, just compensation, or free speech.

**1. Due Process of Law**

The Due Process Clause of the Fourteenth Amendment provides that no State "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 2. Federal courts have repeatedly stated that "the touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). The general rule is that an individual has a right to notice and an opportunity to be heard before the government deprives an individual of property. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).

Under limited circumstances, "a state can cure what would otherwise be an unconstitutional deprivation of 'life, liberty or property' by providing adequate postdeprivation remedies." *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). The *Parratt/Hudson* doctrine states that postdeprivation remedies, including those in the form of a tort action under state law, pass constitutional muster if the government agent's actions were random or unauthorized. *Id.* at 738. Neither a negligent act, *Daniels v. Williams*, 474 U.S. 327, 328 (1986), nor an intentional act, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), deprives an individual of due process of law so long as the act was unauthorized or random.

The *Parratt/Hudson* doctrine "represent[s] a special case of the general *Mathews* . . . analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." *Zinermon v. Burch*, 494 U.S. 113, 128 (1990); *see also Daniels*, 474 U.S. at 333 (holding that tort law would provide an adequate remedy for an injury

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 6

that was caused by a government agent negligently leaving a pillow on a prison stairwell).  The *Parratt/Hudson* doctrine appears to be at its zenith when the case involves prisoners, minor constitutional infractions, and adequate postdeprivation tort claims.  *Daniels*, 474 U.S. at 332-33 ("Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."); *Haygood v. Younger*, 769 F. 2d 1350, 1357 (9th Cir. 1985) (*en banc*) ("*Parratt* and *Hudson* dealt with relatively minor infractions of prisoners' interests in their personal property, and did not deal with official assaults, batteries or other invasions of personal liberty.").

    For an act to be considered random, it must be shown that "the state administrative machinery did not, and could not, have learned of the deprivation until after it has occurred," making pre-deprivation hearings impracticable.  *Parratt v. Taylor*, 451 U.S. 527, 541 (1981) (in cases where the loss is random or unauthorized, "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur"); *Merrett v. Mackey*, 827 F.2d 1368, 1372 (9th Cir. 1987).  "[W]here the injury is the product of the operation of state law, regulation, or institutionalized practice, it is neither random nor unauthorized, but wholly predictable, authorized, and within the power of the state to control." *Haygood*, 769 F. 2d at 1357.

    In the present case, the government argues that, at best, Mustard can establish someone in the DOC was negligent in either: (1) not changing the DT18 screen from "Y" to "N" when Mustard's 1998 J&S was vacated and replaced in 2001; and/or (2) not putting the 2001 J&S on the DOC "Liberty" screen so that Ms. Barshaw would have seen it when investigating and responding to Mustard's 2004 tort claim.  As in *Parratt*, Mr. Mustard suffered from "a tortious loss of . . . property as a result of a random and unauthorized act by a state employee . . . not a result of some established state procedure." *Parratt*, 451 U.S. at 541.  This Court

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 7

agrees that Mr. Mustard suffered loss of property due to an unauthorized and random act committed by one or more government officials and that Washington law provides adequate remedy through its tort law.

Defendants' withdrawal of Mustard's LFOs was pursuant to employees' negligent misapplication of the statute or policy. DOC policy 200.000 states that "LFO deductions are taken in accordance with an offender's Judgment and Sentence (J&S)." Had the DOC policy been followed as authorized, Mr. Mustard would not have been deprived of his funds. Therefore, the policy satisfies due process, even though the actions of the employees in following that policy may have been wrongful. *See Daniels*, 474 U.S. at 332 ("Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.").

Even absent the application of the *Parratt/Hudson* doctrine, the government argues convincingly that there is no genuine issue of material fact regarding the plaintiff's due process claim and, under the more general *Mathews* balancing test, its motion should be granted. Under the *Mathews* test, the Court must examine three factors to determine whether the government's procedure was constitutionally sufficient to protect an individual from erroneous deprivation:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, the government argues that implementing pre-deprivation procedures would be "substantial, if not overwhelming." The government stresses that the administrative costs in implementing pre-deprivation procedures would be

enormous.  The government also notes that pre-deprivation procedures would seriously hamper its ability to withdraw LFO funds.  Further, the chance for erroneous deprivation is marginal because of the monthly bank statements and the grievance procedures in place.  Finally, the government argues that all courts that have addressed the issue of pre-deprivation procedures in the inmate context have "uniformly held that prison officials do not have to provide pre-deprivation notice or hearings to inmates before taking funds from their prison accounts." *See, e.g.*, *Scott v. Angelone,* 771 F. Supp. 1064 (D. Nev. 1991) (inmates not entitled to pre-deprivation hearing when prison officials deduct medical co-pay charges from their accounts).

In his response, Mustard correctly points out that he has an interest in his prison funds.  Mustard does not contest the government's due process points, but rather maintains that the government has deprived him of due process when the government deducted funds from his account in violation of his 2001 J&S.  However, such conclusory assertions are insufficient to create a genuine issue of material fact and survive a summary judgment motion.  *See* Fed. R. Civ. Pro. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings [but] . . . must set forth specific facts showing that there is a genuine issue for trial"); *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 345 (9th Cir. 1995) (stating "conclusory . . . testimony is insufficient to raise a genuine issue of [material] fact to defeat summary judgment").

Implementing some form of pre-deprivation process for LFO deductions would needlessly hamper the government's ability to make such deductions expeditiously.  Moreover, the current process provides protections against erroneous deprivations through monthly bank statements.  The monthly statements combined with the post-deprivation process allow an inmate to effectively challenge any erroneous deprivations.  Therefore, because of the application of the *Parratt/Hudson* doctrine and because the costs associated with the implementation

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 9

of pre-deprivation hearings would be high, the Court dismisses Mustard's due process claim and finds the current post-deprivation procedure in place adequately protects an inmate's due process rights.

## 2. Fifth Amendment Takings

The takings clause under the Fifth Amendment provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const., amend. V.  The Fifth Amendment "limits the government's ability to confiscate property without paying for it"; whereas the due process clause of the Fourteenth Amendment requires the government to "provide appropriate procedural protections when taking such property—*with or without* compensation." *Vance v. Barrett*, 345 F.3d 1083, 1089 (2003) (emphasis added).  The Fifth Amendment's just compensation clause is designed to prevent the government from imposing on a limited number of individuals costs which should be shouldered by the public as a whole.  *Pennell v. City of San Jose*, 485 U.S. 1, 9 (1988).  Further, any taking of property under the Fifth Amendment must be for public use.  *Kelo v. City of New London, Conn.*, 545 U.S. 469, 125 S. Ct. 2655, 2661 (2005).

The government argues that there is no genuine issue of material fact regarding Plaintiff's Fifth Amendment claim.  The government contends that Mustard has not suffered an "economic injury" and that the funds "taken from [Mustard's] account did not go to any public use but were used to pay [Mustard's] existing LFO debt." (Ct. Rec. 17).  For its "economic injury" proposition, the government cites to *Beeks v. Hudley*, 34 F.3d 658 (8th Cir.).  The *Beeks* court noted that deductions "applied to the inmates' pre-existing obligations to the victims of their crimes.  In most cases, crime victims are private persons or institutions."  *Id.* at 661.  The court also found that the withdrawals benefitted the plaintiffs because they lowered their debt.  *Id.*  The government draws from this that LFO deductions do not go to the public *per se* and instead benefit Mustard

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 10

because the funds lower his LFO debt.  Mustard did not respond to the government's summary judgment arguments related to his Fifth Amendment claim.

The government is correct in its assertion that Mustard's claim is not a takings issue.  Although the funds were transferred to Mustard's county of conviction, it is presumed that the funds were then utilized to right the harm caused by Mustard's crime, and that they were not taken for public use.  Therefore, Mustard's Fifth Amendment claim is dismissed.

**3.  Retaliation**

Mr. Mustard's last constitutional claim is that he was retaliated against by Defendant Barshaw when she reset his DT18 screen to continue deducting LFOs from his account after he filed his Washington tort claim.  Retaliation claims involving the First Amendment and prisoners' use of the grievance system require the showing of four elements: (1) adverse action was taken by a state actor; (2) adverse action was taken because of the inmate's use of grievance procedures; (3) the adverse action chilled the inmate's exercise of First Amendment rights; and (4) the adverse action did not reasonably advance a legitimate correctional goal.  *See Rhodes v. Robinson*, 408 F.3d 559, 567-69 (9th Cir. 2005).  Inmates have a First Amendment right in the ability to file prison grievances and pursue litigation in the courts.  *Id.* at 567.  "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices." *Id.*

The government argues that there is no genuine issue of material fact regarding Mustard's retaliation claim; thus, it is entitled to judgment as a matter of law.  The government states that "[t]he circumstances underlying the LFO deductions in this case demonstrate conclusively that none of the Defendants in this case retaliated against Plaintiff and that all actions . . . were done in good faith belief that they advanced legitimate correctional goals."  (Ct. Rec. 17).  To buttress this claim, the government cites to Barshaw's declaration. (Ct. Rec. 19).  In

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 11

response, Mustard points out that Barshaw reset Mustard's DT18 screen to "Y"

after he filed his tort claim against the DOC.  (Ct. Rec. 52).

Mustard has not introduced sufficient evidence in regards to his retaliation

claim to survive a motion for summary judgment.  Examining the facts in the light

most favorable to Mr. Mustard, it does appear that an adverse action was taken

against Mustard, in that Barshaw reset Mustard's DT18 screen.  However, Mustard

has failed to introduce any evidence—apart from the timing of Barshaw's

actions—to show that Barshaw reset Mustard's DT18 screen because Mustard filed

a tort claim.  *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (timing of the

government official's action can constitute circumstantial evidence of retaliatory

intent, however, there must be more to warrant a judgment in the inmate's favor).

As in *Pratt*, there is simply no evidence here that Barshaw was actually aware of

Mr. Mustard's amended 2001 J&S.  *See id.*

Further, Mustard has introduced no evidence to suggest that his First

Amendment rights have been chilled.  Mustard must show some type of injury to

survive a summary judgment motion.  *See Rhodes*, 408 F.3d at 669 n.11 (noting

"harm that is more than minimal will almost always have a chilling effect");

*Resnick v. Hayes,* 213 F.3d 443, 449 (9th Cir. 2000) (holding a plaintiff must

allege some type of injury to survive a motion to dismiss).  Although Mustard was

harmed when the DOC deducted money from his prison funds in violation of his

J&S order, this harm was not caused by the alleged retaliation.  Moreover,

Mustard's DT18 screen was reset once again to "N" soon after; thus preventing

any unlawful deductions.  There is nothing in the record to suggest that Mustard

has been harmed except for the allegations in his complaint that his First

Amendment rights have been violated.  *See* Fed. R. Civ. Pro. 56(e) ("an adverse

party may not rest upon the mere allegations or denials of the adverse party's

pleadings [but] . . . must set forth specific facts showing that there is a genuine

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 12

1   issue for trial").

2       Finally, Mustard has introduced no evidence to suggest that Barshaw did not

3   change his DT18 in good faith to advance legitimate correctional goals. Indeed,

4   Barshaw's actions seem consistent with the legitimate goal of deducting LFOs to

5   pay an inmate's debt to society.  Therefore, the Court grants the government's

6   motion for summary judgement of Plaintiff's § 1983 claim on the grounds that

7   Mustard has not created a genuine issue of material fact that would warrant a trial.

8   *See Celotex Corp.* 477 U.S. at 323 (if the nonmoving party "fails to make a

9   showing sufficient to establish the existence of an element essential to that party's

10  case, and on which the party will bear the burden of proof at trial," then the trial

11  court should grant the motion).

### 4.  Qualified Immunity

13      To establish that qualified immunity does not apply, the plaintiff must show

14  that: (1) the government agent's conduct violated a constitutional right; and (2) the

15  right violated was clearly established.  *Saucier v. Katz*, 533 U.S. 194 (2001).

16  However, qualified immunity is only available if the government agent is being

17  sued in his or her individual capacity. *Bd. of County Comm'rs, Wabaunsee County*

18  *Kan. v. Umbehr*, 518 U.S. 668 n.1 (1996).  If the complaint is vague, the United

19  States Supreme Court has noted that determination of whether an individual is

20  bringing an official-capacity or an individual-capacity action depends on "[t]he

21  course of proceedings." *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985)

22  (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)).

24      The record is unclear as to whether Mustard is suing the named defendants

25  in their individual capacities, official capacities, or both.  Given the principal that

26  *pro se* pleadings should be construed liberally, it is likely that Mustard is alleging a

27  § 1983 claim against government officials in both their individual and official

28  capacities.  First, Mustard is arguing for money damages which are only available

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 13

in a § 1983 claim when the individual is being sued in his or her individual capacity. *See Miller v. King*, 384 F. 3d 1248 (11th Cir. 2004). Second, Mustard is also seeking injunctive relief concerning DOC policy 200.000.

Because Mustard is bringing a § 1983 claim against government officials in their official capacities, the Court must determine whether qualified immunity applies. Here, Mustard has failed to show a genuine issue of material fact regarding any of his constitutional claims. Mustard's due process claim fails because the government's post-deprivation procedures provide due process. Mustard's Fifth Amendment claim fails because his LFO deductions are benefitting him by lowering his debt to society and are not being taken for public benefit. Finally, Mustard's retaliation claim fails because Mustard has failed to show that he was harmed or that the government's action was not done pursuant to a legitimate correctional practice. Therefore, qualified immunity applies to Defendants insofar as they are being sued in their individual capacities.

## B. State Law Claim

The Court has supplemental jurisdiction over Plaintiff's remaining state law claim for conversion pursuant to 28 U.S.C. § 1367. The Court may dismiss this remaining claim under 28 U.S.C. § 1367(c)(3) if the Court "has dismissed all claims over which it has original jurisdiction." Because the Court is granting summary judgment for Plaintiff's § 1983 claim, the only remaining claim is his claim for the tort of conversion. This claim is dismissed under § 1367(c)(3) without prejudice, and its dismissal does not operate as a bar against refiling in state court. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1067 n.7 (9th Cir. 2004).

///

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (Ct. Rec. 16) is **GRANTED**.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 14

2.  Plaintiff's Motion for Summary Judgment (Ct. Rec. 50) is **DENIED**.

3.  The District Court Executive is directed to **ENTER JUDGMENT** in favor of Defendants on Plaintiff's § 1983 claims.

4.  Plaintiff's remaining state law claim for conversion is **DISMISSED without prejudice** pursuant to 28 U.S.C. §1367(c)(3).

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and forward copies to Plaintiff and counsel for Defendants and **close the file**.

**DATED** this 12th day of December, 2006.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2005\Mustard\grant.sj.ord.wpd

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT * 15